UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CAKE LOVE CO. and Q-MARK MANUFACTURING, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERIPRIDE SERVICES LLC,<br><br>Defendant. | Civil No. 22-CV-01301-PJS-ECW |

### DECLARATION OF D. GREG BLANKINSHIP IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

I, D. Greg Blankinship, declare the following under the penalties of perjury:

1. I am a partner in the law firm of Finkelstein, Blankinship, Frei-Pearson & Garber, LLP ("FBFG") and counsel for Plaintiffs Cake Love Co. and Q-Mark Manufacturing, Inc. ("Plaintiffs") in the above-captioned action. As such, I have personal knowledge of the information set forth herein.

2. I make this declaration in support of Plaintiffs' Consent Motion for Preliminary Approval of Class Action Settlement.

3. This nation-wide class settlement achieves an excellent result for approximately 70,000 small and medium-sized businesses around the nation.

4. If not for the Settlement, there would be no economically practical way to pursue Class Member claims, especially considering the possibility of contractual fee shifting in Defendant's favor under the Contract. The Contract between AmeriPride

Services LLC ("AmeriPride" or "Defendant") (together with Plaintiffs, the "Parties") and Plaintiffs (and all Class Members) provides that "[s]hould [AmeriPride] need to hire a lawyer to enforce the terms of this Agreement, you agree to reimburse us for the lawyer's fees and costs." Thus, a Class Member who chooses not to pay increases over 6% on the basis that they are unauthorized owing to a lack of notice faces the prospect of a lawsuit from AmeriPride and the risk of having to pay AmeriPride's lawyers. A class member who continues to pay even while suing, on the other hand, faces the prospect of losing that suit owing to waiver and voluntary payment. In either event, it is difficult if not impossible for a Class Member to vindicate their rights in an individual suit.

5. Defendant printed notices on Plaintiffs' invoices stating either "an annual increase has been applied to your charges," "an increase has been applied to your charges" or "an increase may have been applied to some or all of your charges."

6. It is Plaintiffs' position that AmeriPride personnel are trained to avoid honoring customers' rejection of price increases however they can. *See* Plaintiff's Memorandum Of Law In Opposition To Defendant's Motion For Summary Judgment at 27-28 (citing an AmeriPride Quick Reference Guide that, while stating that customers have the right to reject price increases above 6% annually, coaches AmeriPride representatives to respond to customer's rejections of price increases by making "every effort to have our price increases stick" and that "The team should make every effort to make the API [annual price increase] stick and avoid rolling back pricing or crediting anything."). It is Plaintiffs' position in the litigation that AmeriPride repeatedly refused to roll back prices when Cake Love rejected price increases, *Id.* at 36, something that AmeriPride disputes.

2

7. Discovery has confirmed that the same notice provision for price increases over a certain percentage is in every Class Member's Contract. *See, e.g.,* Deposition of Carlos Garza ("Garza Dep.") at 21:13-18 ("Q. Okay. Is the 6% restriction on price increases without notice part of a standard AmeriPride contract? [objection omitted] A. That is correct, sir. That is – the 6% is part of the AmeriPride service agreement.").

8. Plaintiffs have shown their dedication to the entire Settlement Class by seeking out Class Counsel experienced in class claims, providing Class Counsel with information about AmeriPride's communications and practices, pursuing class claims (as opposed to individual claims), responding to written discovery, being deposed, negotiating on behalf of the entire Settlement Class, and otherwise providing ongoing assistance to the Class Counsel.

9. Class Counsel are unaware of any Class Member that desires to control its own claim.

10. Counsel for AmeriPride has represented that after a review its own in-house attorneys and outside counsel have not found an instance of a customer initiating litigation substantially similar to that in this lawsuit.

11. During discovery and as part of the settlement negotiations, AmeriPride confirmed that it can reasonably identify Class Members using its accurate and reliable customer records.

12. While there has been significant discovery, including four depositions and the production of hundreds of thousands of pages of ESI and documents, much still remains

to be done. Numerous depositions and time-consuming review of Defendant's voluminous document production are still needed to fully prepare this Action for trial.

13. Expert data collection and damage calculations will likely be very expensive if this Action proceeds to trial.

14. Plaintiffs and Class Counsel are not aware of any Class Member that intends to oppose the Settlement.

## Mediation & Settlement

15. The parties engaged in numerous mediation sessions under the supervision of JAMS mediator Hon. James M. Rosenbaum. Mr. Rosenbaum is a highly-respected mediator with extensive experience in evaluating and resolving large-scale litigation such as complex class actions.

16. The Parties mediated with Judge Rosenbaum for a full day on March 18, 2023, but the Parties did not reach a settlement at that time.

17. On March 18, 2024, the parties engaged in an all-day mediation session and multiple subsequent mediation sessions to resolve this action. Prior to and during this mediation, the parties exchanged information about damages and their legal theories.

18. With Judge Rosenbaum's assistance, on May 23, 2024, the parties reached a settlement in principle on key terms with respect to class members' claims. After that mediation date, Judge Rosenbaum remained actively engaged with the Parties, conducted subsequent rounds of negotiation, and ultimately (on May 23, 2024) mediated the financial terms and general injunctive relief that formed the basis of the final settlement.

19. The parties then negotiated a formal settlement agreement, attached to my Declaration as Ex. A. The parties did not negotiate attorneys' fees and costs until they agreed upon the relief for the class members.

## Settlement Terms

20. Based on a reasonable analysis of Defendant's records, the Settlement Class has 69,789 Class Members, which equals an average of $43.70 per Class Member before Service Awards, attorneys' fees, litigation costs and Administration Fees.

21. Class Counsel will request fees equal to forty percent (40%) of the gross monetary Settlement Amount plus costs totaling $1,295,903. 40% of the $3,050,000 Settlement Amount is $1,220,000. Class Counsel's lodestar is well over $2 million, meaning that this request will represent a negative multiplier of approximately 50%. Collectively, Class Counsel incurred $75,903 in costs. These costs are the usual litigation costs, including filing fees, deposition costs, travel, expert fees, and ESI costs.

22. Using Defendant's disclosures made during discovery, Plaintiffs estimate that the maximum possible actual damages for the Settlement Class are approximately $7,425,000.00. Plaintiffs allege this calculation was well informed by discovery. Thus, the Settlement Agreement provides for recovery of approximately 41% of the Settlement Class's maximum monetary damages.

23. There is no indication that AmeriPride lacks resources needed to pay the settlement amount or more.

**FBFG Has Experienced Consumer Class Action Attorneys**

24.     FBFG will fairly and adequately represent the interests of all class members. FBFG has a proven track record of zealously and successfully advancing the interests of class members in consumer class actions.

25.     FBFG has more than sufficient resources to represent the class. FBFG's attorneys are highly qualified and have extensive experience in complex civil litigation and consumer class actions. We understand the duties imposed upon class counsel in consumer class actions and have proven adept at all phases of litigation, from discovery and motion practice to trial and appeal or settlement.

26.     FBFG's partners have been recognized as "Super Lawyers" and have been selected by their peers as amongst the New York area's "Best Lawyers." The firm's lawyers have been selected for admission to the Top Trial Lawyers in America™ and to the Litigation Counsel of America's Trial Lawyer Honorary Society, as well as inducted as Fellows in the American Bar Foundation.

27.     FBFG attorneys have successfully litigated complex class actions in federal and state courts all across the country and have obtained successful results for clients against some of the world's largest corporations. A sampling of the Firm's more significant past and present cases can be found in the Firm's Resume, a copy of which is attached to my declaration as Exhibit B.

28.     FBFG has been appointed class counsel numerous times.

29.     FBFG attorneys have the requisite knowledge of the substantive and procedural law to prosecute this class action. FBFG has committed its resources to the

vigorous litigation of this case, has identified appropriate claims, and has aggressively pursued discovery to establish the evidence necessary to obtain class certification and to prevail on the merits.

30. Other than the Settlement Agreement itself, there are no agreements made in connection with the proposal.

31. Attached as Exhibit A is a true and correct copy of the Class Action Settlement Agreement.

32. Attached as Exhibit B is a true and correct copy of FBFG's Firm Resume.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 19, 2024

Respectfully submitted,

By: /s/ D. Greg Blankinship_____
Greg Blankinship
**FINKELSTEIN, BLANKINSHIP FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
gblankinship@fbfglaw.com